UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Pamela Higgins,

      Plaintiff,

v.

Town of Concord, Kate Hodges
and Christopher Whelan, in
their individual capacities,

      Defendants.

No. 16-CV-10641-DLC

**MEMORANDUM AND ORDER ON DEFENDANTS TOWN OF CONCORD, KATE HODGES
AND CHRISTOPHER WHELAN'S MOTION TO DISMISS (Dkt. No. 10)**

CABELL, U.S.M.J.:

The plaintiff, Pamela Higgins ("the plaintiff" or Higgins),
worked for the town of Concord, Massachusetts ("Concord" or "the
Town") for several years, reportedly without incident.  She alleges
that the Town and two of its employees, Kate Hodges (Hodges) and
Christopher Whelan (Whelan), (collectively, "the defendants"),
retaliated against her for taking leave under the Family and
Medical Leave Act (FMLA) to care for her husband, by fabricating
disciplinary issues and ultimately forcing her to resign.  The
defendants move to dismiss the amended complaint ("the complaint")
for failure to state a claim; the plaintiff opposes the motion.

(Dkt. Nos. 10, 13).  For the reasons discussed below, the motion to dismiss is granted in part and denied in part.

## I.   BACKGROUND

### A. <u>Facts</u>

The facts as taken from the complaint are as follows.  The plaintiff began working part-time for the Concord Recreation department in 1981 and became a full-time employee in 1989. (Compl. ¶ 6).  In 2000 she became Assistant Recreation Director. (Id.).

In February 2015 defendant Hodges became Assistant Town Manager.  (Compl. ¶ 8).

On or about March 24, 2015, the plaintiff became Acting Recreation Director following the former director's retirement. (Compl. ¶ 9).

The plaintiff received positive performance evaluations at all times during her employment.  (Compl. ¶ 7).  In a June 2015 yearly evaluation, Hodges rated the plaintiff as a "top performer." (Compl. ¶ 10).

In July 2015 the plaintiff's husband was diagnosed with stage four lung cancer.  (Compl. ¶ 11).  She informed Hodges of her husband's diagnosis and noted that she would regularly need to attend medical appointments with her husband.  (Compl. ¶ 11). Hodges informed Whelan of the diagnosis and the plaintiff's need to regularly attend appointments.  (Compl. ¶ 11).  Neither Hodges

nor anyone in the Concord town government provided the plaintiff with FMLA paperwork or a notice of her FMLA rights at this time. (Compl. ¶ 12).   The plaintiff attended numerous medical appointments with her husband from July 2015 until the end of her employment in February 2016.  (Compl. ¶ 13).

Meanwhile, throughout the fall of 2015, the Town was searching for a full-time Recreation Director.  (Compl. ¶ 14).  On or about December 17, 2015, Hodges informed the plaintiff that she could apply for the position but that the Town was going to look externally to fill the full-time position.  (Compl. ¶ 14).

In or about January 2016 the plaintiff for the first time received FMLA paperwork to complete.  (Compl. ¶ 15).  She completed the paperwork requesting intermittent leave and returned it to the Town's HR department.  (Compl. ¶ 15).  On the following day, Hodges and HR Director Amy Foley (Foley) invited the plaintiff to a meeting to interview her about an investigation into potential misconduct involving another employee in the Recreation Department.  (Compl. ¶ 16).  They asked the plaintiff questions and requested that she collect data about this employee.  (Compl. ¶ 16).

Within a few days Hodges and Foley met with the plaintiff again and asked her if she had spoken to anyone about the investigation.  (Compl. ¶ 17).  The plaintiff had spoken to two employees briefly, including Jon Straggas (Straggas), the Acting

Assistant Recreation Director.   (Compl. ¶ 17).   Hodges and Foley told the plaintiff that she could be fired for doing so.   (Compl. ¶ 17).   At this meeting or soon thereafter, Hodges told the plaintiff that Hodges could not appoint her to the full-time Recreation Director position because the plaintiff had spoken to co-workers about an internal investigation. (Compl. ¶ 18). Hodges suggested that the plaintiff give her co-workers an excuse to explain why she was out of consideration for the job, specifically that she had decided against taking the position due to her husband's medical condition.   (Compl. ¶ 18).   The plaintiff followed this suggestion even though it was false. (Compl. ¶ 20).

On January 19, 2016, Hodges announced at a staff meeting that the plaintiff was withdrawing from consideration for Recreation Director, and that Straggas was being appointed General Manager of the Beede Center.   (Compl. ¶ 19).   The plaintiff had previously been in charge of the Beede Center and this announcement was made without first having informed her. (Id.).

On or about January 21, 2016 Hodges approached the plaintiff as she was cleaning out her office at the Beede Center.   (Compl. ¶ 21).   Hodges told her that the Town was requiring her to sign a Last Chance Agreement ("LCA") as a condition of continued employment. (Id.).

The LCA specifies the following:

    a. It lasts three years;

b. Higgins' employment will be deemed to be at-will regarding the following misconduct -- failure to follow directions, improper sharing of information, failure to be forthright/forthcoming in any manner, or policy violations;

c. The Town will be considered to have satisfied the just cause standard regarding any discipline for such misconduct;

d. Higgins shall have no right to appeal any adverse action for such misconduct;

e. Town Manager Whelan, at his sole discretion, may terminate Higgins for any such misconduct, and she preemptively waives pre-discipline or pretermination meeting/hearing rights she has based on her status as a public employee;

f. Higgins waives any and all rights to file or assert any claims, including court actions, regarding any further disciplinary action, including termination, taken by the Town for the three-year period under the LCA;

g. Higgins agrees that she had the opportunity to consult with an attorney before signing the LCA.

(Compl. ¶ 22).

The plaintiff signed the LCA that day but did not have the opportunity to consult with an attorney before doing so. (Compl. ¶ 23). In fact, Hodges told the plaintiff that she would be terminated if she did not sign the LCA, despite the fact that the plaintiff had not ever received any discipline before receiving the LCA, and had not received any formal discipline for speaking to co-workers about the internal investigation discussed above. (Compl. ¶¶ 23-24). The Town signed the LCA on January 25, 2016. (Compl. ¶ 25).

Subsequently, in two staff meetings near the end of January and the beginning of February 2016 at which the plaintiff was

present, Whelan and/or Hodges posed some questions to the staff. (Compl. ¶ 27).  The questions were intended for Straggas but the plaintiff, unaware of that fact, answered them, to Whelan's and Hodges's consternation.  (Compl. ¶ 27).  On February 19, 2016, Hodges and Foley met with the plaintiff and told her that she had violated the LCA by answering the questions directed to Straggas. (Compl. ¶ 28).  The plaintiff was given a choice to decide by February 22nd whether to resign voluntarily or be terminated. (Compl. ¶ 28).  The plaintiff received a letter later that day from Hodges stating that the plaintiff had been placed on administrative leave and would probably be terminated the following week.  (Compl. ¶ 29).  The letter did not provide any notice of a pre-termination hearing.  (Compl. ¶ 30).

On February 23, 2016, and as a result of the foregoing, the plaintiff resigned, involuntarily.  (Compl. ¶ 31).  But for these events, the plaintiff had intended to work at least three more years.  (Compl. ¶ 32).

### B. The Complaint (Dkt. No. 4)

Count One of the complaint alleges that the defendants treated the plaintiff unfairly and terminated her in retaliation for her taking leave to care for her husband, in violation of the FMLA, 29 U.S.C. § 2615(a)(1).

Count Two alleges that the defendants deprived the plaintiff of her procedural and/or substantive due process rights by terminating her without affording her a hearing.

Count Three alleges that the defendants breached a contract with the plaintiff by forcing her to sign the LCA and to resign.

### C. The Motion to Dismiss

The defendants argue that the complaint should be dismissed because the plaintiff waived her right to bring suit against them when she signed the LCA.  The defendants argue that the complaint fails independently because it does not allege plausible facts to support any of the counts.  Finally, the defendants argue that Hodges and Whelan are entitled to qualified immunity on Counts One and Two.

### II. LEGAL STANDARD

Courts reviewing a motion to dismiss under Rule 12(b)(6) must apply the notice pleading requirements of Rule 8(a)(2).  *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 66-67 (1st Cir. 2004).  Under Rule 8(a)(2), a complaint need only include a short and plain statement of the claim showing that the pleader is entitled to relief and giving the defendant fair notice of the grounds for the plaintiff's claim.  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Therefore, "a Court confronted with a Rule 12(b)(6) motion 'may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved

7

consistent with the allegations.'" *Educadores Puertorriquenos en Accion* at 66 citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

To show that one is entitled to relief, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully," and is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) quoting *Twombly,* 550 U.S. at 556.  A court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) quoting *Artuso v. Vertex Pharmaceuticals, Inc.,* 637 F.3d 1, 5 (1st Cir. 2011).  However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678 quoting *Twombly,* 550 U.S. at 555.

## III. ANALYSIS

As a threshold matter, the defendants submit six extraneous documents along with their motion to dismiss, including: (1) the LCA; (2) the Town Charter; (3) the February 19, 2016 letter placing

the plaintiff on administrative leave; (4) a copy of the Town Employee Appeal Procedure; and (5-6) two emails from the plaintiff to Hodges.  In one email written on February 12, 2016, the plaintiff appears to apologize to Hodges for her behavior in an office meeting the previous day.  In the second email written on February 23, 2016, the plaintiff tenders to Hodges her resignation.

On a motion to dismiss, "[o]rdinarily… any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).  There is a narrow exception to this rule for certain types of documents, including: (1) documents the authenticity of which are not disputed by the parties; (2) official public records; (3) documents central to plaintiffs' claim; or (4) documents sufficiently referred to in the complaint. *Watterson* at 3.

The plaintiff does not challenge inclusion of the first four referenced items but does challenge the inclusion here of the two emails.  Applying *Watterson,* the emails are neither official public records nor referred to in the complaint, and therefore may be considered only if their authenticity is not disputed or if they are central to the plaintiff's claims. *Id*.  The defendants argue that the emails are central to the plaintiff's claims because they show that she voluntarily resigned -- contrary to her allegations. The plaintiff demurs, and argues moreover that the emails, to be

properly understood, cannot be read alone, and would require additional evidence in the form of an affidavit to place them in their proper context. Based on that representation, and exercising caution to avoid converting a motion to dismiss into a motion for summary judgment based on an incomplete record, the Court declines to consider the emails at this juncture, even assuming for the sake of argument that they are authentic and/or germane to the plaintiff's claims.

**Dismissal based on the LCA is not appropriate where the plaintiff alleges that she was coerced into signing the LCA and that the LCA itself was an act of retaliation.**

The defendants contend that the entire complaint should be dismissed because the plaintiff waived her right to sue them when she signed the LCA. Among other things, the LCA provides that the plaintiff "waives any and all rights to file or assert any claims, including court actions, regarding any further disciplinary action, including termination…." (Compl. ¶ 22). Provided that an employment agreement containing a waiver provision is entered into freely and absent duress, courts will uphold the waiver. *See Mills v. U.S. Postal Service*, 977 F. Supp. 116, 123 (D.R.I. 1997) ("If an employee waives administrative appeal rights through an LCA freely and absent duress, courts will uphold the waiver.").

Here, however, the complaint alleges that the plaintiff did not freely sign the LCA. Rather, it alleges that the impetus for the LCA was unfair retaliation for the plaintiff's taking of FMLA

leave, and that the defendants pressured the plaintiff into signing the LCA and then forced her to resign involuntarily.  If true, such facts might well provide the plaintiff with a basis to challenge the enforceability of the LCA.  *See South Bay Boston Mgmt. v. Unite Here, Local 26*, 587 F.3d 35, 41-42 (1st Cir. 2009) (contract entered into by coercion or under duress is voidable); *Outek Caribbean Distributors, Inc. v. Echo, Inc.*, 206 F. Supp. 2d 263, 268 (D.P.R. 2002) ("A contract may be unenforceable … if the party challenging the contract has been the victim of fraud or overreaching; if the party was coerced into signing; if it was denied the opportunity to seek legal advice prior to entering into the agreement; or if the contract is somehow unconscionable.").

Where the enforceability of the LCA may be one of the key issues in this case, and is likely to turn on as yet undiscovered facts surrounding its creation and execution, both parties should be entitled to fully explore the issue through discovery, and dismissal at this early juncture therefore would not be appropriate.  *See Long v. McDonald*, No. CIV-16-209-RAW, 2016 WL 6304697, at *1 (E.D. Okl. October 27, 2016) (dismissal precluded based on allegations that last chance agreement was entered into under duress); *see also Callicotte v. Carlucci*, 698 F. Supp. 944, 947 (D.D.C. 1988) (LCA struck down as against public policy where it forced the plaintiff to waive her substantive statutory rights

under the Rehabilitation Act).  Accordingly, the Court cannot agree
at this stage that the LCA bars the plaintiff's lawsuit.

### The complaint states a claim for FMLA Retaliation.

The FMLA requires covered employers (including the
defendants) to provide their employees with unpaid leave for
qualified medical and family-related reasons, such as caring for
a sick family member, and prohibits an employer from retaliating
against an employee for exercising her FMLA rights.  29 U.S.C. §§
2601 et seq.; 29 C.F.R. § 825.220(c); *Carrero-Ojeda v. Autoridad
de Energia Electrica*, 755 F.3d 711, 719 (1st Cir. 2014); 29 U.S.C.
§ 2615(a)(2).  To be sure, merely engaging in protected conduct
does not insulate an employee from discipline or termination, but
"an employer may not use an employee's FMLA leave as a negative
factor in deciding to hire, fire, promote, or provide benefits to
an employee."  *Carrero-Ojeda* at 719.  On the other hand, "an
employee may … be discharged, not promoted, or denied benefits for
independent reasons during or after her taking of FMLA leave."
*Id*.

While a plaintiff need not plead a *prima facie* case to survive
dismissal under Rule 12(b)(6), the elements of a *prima facie* case
are useful as a prism to shed light upon the plausibility of a
plaintiff's claim.  *Id*.  To make out a *prima facie* case of FMLA
retaliation a plaintiff must show that (1) she availed herself of
a protected FMLA right (*e.g.*, she engaged in protected conduct),

(2) she was adversely affected by an employment decision, and (3) there was a causal connection between the protected conduct and the adverse employment action. *Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc.*, 447 F.3d 105, 113-14 (1st Cir. 2006).  The Court finds that the plaintiff has met her burden here.

With respect to the first prong, there is no real dispute that the complaint adequately alleges that the plaintiff completed FMLA paperwork and took time off from work to attend her husband's medical treatments.

With respect to prong two, the defendants argue that the plaintiff was not adversely affected by an employment decision because she resigned voluntarily.  However, when a resignation comes as the result of an employer offering the employee a choice between resignation or termination, as the complaint alleges here, a resignation can amount to an adverse employment action.  *See Pierce v. Alice Peck Day Memorial Hosp.*, No. Civ. 00-318-M, 2002 WL 467125, at *1 (D.N.H. March 11, 2002) ("The hospital does not contest the fact that Pierce's resignation was in lieu of termination.  Had she not resigned, she would have been fired, and the hospital seems to concede that circumstance amounts to an "adverse employment action.").  Taking the allegations in the complaint as true, the Court finds that the complaint adequately alleges that the plaintiff was affected by an adverse employment action.

Regarding prong three, the defendants argue that the plaintiff offers no facts other than timing to show that her termination was the result of her protected FMLA conduct. That is not entirely accurate, however. The complaint also alleges that the plaintiff had never previously been disciplined before completing the FMLA paperwork, and in contrast was disciplined and forced to sign the LCA only after engaging in protected conduct. Where the complaint alleges such a stark contrast in the way the plaintiff had been treated for several years prior to engaging in protected conduct, and the way in which she was treated almost immediately after doing so, that is enough at this stage to support the allegation that the plaintiff's termination was causally connected to her act of exercising her rights under the FMLA.

### **The plaintiff has sufficiently alleged procedural and substantive due process claims.**

The defendants argue that Count Two alleges insufficient facts to support a procedural or substantive due process claim. The due process clause of the Fourteenth Amendment protects interests in life, liberty, and property. U.S. Const. amend. XIV. "When protected interests are implicated, the right to some kind of prior hearing [before deprivation of those rights] is paramount." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972). A Fourteenth Amendment due process claim can be substantive or procedural, or both. *Ramos v. Gallo*, 596 F.

Supp. 833, 837 (D. Mass. 1984).  A procedural due process claim "focuses on the procedures used by the state in effecting the deprivation of liberty or property, which the claimant argues were inadequate in light of the significance of the interests involved…." *Ramos*, 596 F. Supp. at 837.  On the other hand, a substantive due process claim alleges that "the state's conduct is inherently impermissible, regardless of any protective or remedial procedures it provides." *Id*.

### i. Procedural Due Process

With respect to the claim of a procedural violation, the defendants argue that the plaintiff resigned voluntarily and therefore cannot show that the Town deprived her of any property interest.  The defendants argue that the procedural claim fails even assuming the plaintiff was wrongfully disciplined because she failed to pursue "available post-deprivation relief."  To that extent, the defendants argue that the plaintiff cannot on the one hand claim that the LCA was invalid because it was forced upon her, but yet defend her failure to seek post-discipline relief on the ground that it would have been futile in light of the LCA.

To establish a procedural due process violation, a plaintiff must identify a protected liberty or property interest, and allege 'that the defendants, acting under color of state law, deprived [the plaintiff] of that ... interest without constitutionally adequate process.'" *Aponte-Torres v. University of Puerto Rico*,

15

445 F.3d 50, 56 (1st Cir. 2006) quoting *PFZ Props., Inc. v. Rodriguez*, 928 F.2d 28, 30 (1st Cir. 1991) *overruled on other grounds*.  The identifiable interest at issue here is a property interest in continued employment.

In order to have procedural due process rights in her employment, the "plaintiff must have had a reasonable expectation, based on a statute, policy, rule, or contract, that he or she would continue to be employed." *Concepcion Chaparro v. Ruiz-Hernandez*, 607 F.3d 261, 264 (1st Cir. 2010).  "Property interests are not created by the Constitution, [but] they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (internal quotations omitted); see also *Bishop v. Wood*, 426 U.S. 341, 344 (1976) ("A property interest in employment can, of course, be created by ordinance, or by an implied contract.  In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law.").  At the motion to dismiss stage, however, "[t]he plaintiff is not obligated … to fully plead the law providing them a property interest; they only have to plead facts that would give their claim of a property interest sufficient plausibility." *Vazquez-Velazquez v. Puerto Rico Highway and Transportation Authority*, CIVIL NO.:15-1727 (MEL), 2016 WL 183653, at *5 (D.P.R. Jan. 14, 2016).

Here, the complaint alleges sufficient facts to support an inference that the plaintiff had a protected property interest in her employment.  Among other things, the Town Charter appears to indicate that an employee could only be removed "for cause" but the LCA indicated that the plaintiff would henceforth be deemed an "at-will" employee who waived any pre-discipline/termination hearing rights she previously had.  Where a law requires cause for removal, an employee acquires a property interest in continued employment.  *See McCann v. City of Lawrence*, 659 F. Supp. 2d 243, 249 (D. Mass. 2009) citing *Reagan v. Comm'r of Ins.*, 343 Mass. 202, 206 (1961).

The defendants argue that the plaintiff voluntarily signed the LCA and then resigned, and therefore was not deprived of any procedural right to a hearing or post-discipline review.  As noted above, though, the plaintiff alleges that she was forced to sign the LCA and did not resign voluntarily.  The defendants argue that the procedural due process claim fails even assuming the plaintiff was wrongly disciplined, because it then means she should have known she was entitled to ignore the LCA and pursue her procedural rights.  The defendants frame this as a question of fairness but if that is true, it similarly holds that the defendants cannot simultaneously contend on the one hand that the LCA was a valid agreement that properly waived the plaintiff's procedural rights, but argue with equal force on the other that the plaintiff's claim

17

should be dismissed because she did not ignore the LCA and pursue her rights regardless.  In the Court's view, additional discovery is needed to determine whether there is any merit to this claim. Dismissal at this stage is not appropriate.

### ii. Substantive Due Process

The substantive due process claim is a bit more difficult to discern.  "While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, ... substantive due process rights are created only by the Constitution."  *Christensen v. Kingston School Committee*, 360 F. Supp. 2d 212, 223 (D. Mass. 2005) quoting *Regents of University of Michigan v. Ewing,* 474 U.S. 214, 229 (1985) (Justice Powell, concurring).  In order to establish a substantive due process claim, a "plaintiff must show *both* that the acts were so egregious as to shock the conscience *and* that they deprived him of a protected interest in life, liberty, or property."  *Pagan v. Calderon,* 448 F.3d 16, 32 (1st Cir. 2006) (emphasis original).

The Supreme Court has stated that "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."  *Albright v. Oliver*, 510 U.S. 266, 272 (1994).  Indeed, such claims generally do not involve deprivations of property or employment interests.  *Wilson v. Moreau*, 440 F.

18

Supp. 2d 81, 100 (D.R.I. 2006); see also *Mayami v. Puerto Rico Ports Authority*, 515 F.3d 20, 30 (1st Cir. 2008) (allegations that plaintiff was reinstated to a career position with inferior duties and a decreased salary were insufficient to cross the constitutional threshold).

The First Circuit has emphasized that merely because an employee has a valid protected property interest under the procedural due process clause does not mean that the same property interest will be enough to sustain a substantive due process claim. *See Santiago de Castro v. Morales Medina*, 943 F.2d 129, 131 (1st Cir. 1991) (noting that "the Supreme Court has never suggested that the constitutional safeguards accorded under the substantive component of the Due Process Clause embrace all state-created property interests entitled to procedural due process protection" and that "in the realm of substantive due process it is only when some *basic and fundamental principle* has been transgressed that 'the constitutional line has been crossed.'") (internal quotations omitted; emphasis original).

However, substantive due process claims based on employment interests are not outright prohibited, even if they are much less likely to rise to the level of a constitutional violation, and at least two courts in this district have entertained such claims. *See Dobelle v. Flynn*, 12 F. Supp. 3d 274, 290 (D. Mass. 2014) (considering but ultimately rejecting a substantive due process

claim based on employment), and *Bliss v. Sanguinet,* No. 12-10123-RWZ, 2013 WL 3334728 (D. Mass. June 24, 2013) (allowing an employment-based substantive due process claim to survive a motion to dismiss).

Beyond requiring deprivation of a constitutionally protected interest, substantive due process claims "are limited to government action that, by its very nature, 'shock[s] the conscience,' and we reserve it for 'truly horrendous situations.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 40 (1st Cir. 2013) (internal citations omitted). Indeed, "[c]ourts are reluctant to find 'conscience shocking' behavior implicating a constitutional violation when the plaintiff was not physically abused, detained, or prosecuted due to racial or political motivation, or otherwise deprived of equal protection of law." *Forest v. Pawtucket Police Dept.*, 290 F. Supp. 2d 215, 231 (D.R.I. 2003) citing *Senra v. Cunningham*, 9 F.3d 168, 173 (1st Cir. 1993). "Mere violations of state law, even violations resulting from bad faith, do not necessarily amount to unconstitutional deprivations of substantive due process." *DePoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir. 2005).

One court in this Circuit has collected cases in which the First Circuit has found behavior to be conscience shocking, and they all involve very extreme circumstances. *See Esposito v. Town of North Providence*, No. C A 04-302S, 2006 WL 2711736, at *12

20

(D.R.I. Sept. 21, 2006) (collecting cases); *Limone v. Condon,* 372 F.3d 39, 45 (1st Cir. 2004) (framing of innocent citizens for crimes they did not commit), *Souza v. Pina,* 53 F.3d 423, 427 (1st Cir. 1995) (involving extreme or intrusive physical contact), and *Harrington v. Almy,* 977 F.2d 37, 43-44 (1st Cir. 1992) (requiring a suspended police officer to undergo a penile plethysmograph as a condition of reemployment).

Nevertheless, as noted above, at least one court in this district has found facts somewhat similar to those in this case to be sufficient to survive a motion to dismiss. *See Bliss*, 2013 WL 3334728, at *5 (complaint survived where defendant alleged "that town officials unlawfully targeted him for personal and political reasons by … bringing unfounded charges of misconduct, conspiring … to concoct false allegations against him, and knowingly terminating him without just cause."). The complaint here alleges that the plaintiff had never been disciplined in the 27 years prior to engaging in protected FMLA conduct, that the defendants targeted her because she had engaged in protected FMLA conduct, that they manufactured disciplinary issues as a way to impose the LCA on her, that they offered her the LCA while she was cleaning out her office after having her managerial position taken away, that they told her in unmistakable terms that she would be terminated if she did not sign it (and thereby waive her rights), and then concocted a breach of the LCA in order to secure her removal. While these

facts are not as egregious as cases involving bodily intrusion, a reasonable factfinder could find such facts rise to a level that shocks the conscience. I find, therefore, that the complaint pleads sufficient facts to make out a substantive due process claim.

### The Court cannot determine whether Hodges and Whelan are entitled to qualified immunity at this stage.

The defendants argue that Hodges and Whelan are entitled to qualified immunity on Counts One and Two. At the motion to dismiss stage "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis original). As such, "[i]t is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity defenses at the summary judgment stage." *Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010). Consequently, if qualified immunity is not granted at the motion to dismiss stage nothing prevents a party from raising it again after further development of the facts. *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). *See also Olivio Gonzalez v. Teacher's Retirement Bd.*, 208 F. Supp. 2d 163, 167 (D.P.R. 2002) ("Since the issue of qualified immunity has been raised in the context of a motion to dismiss, and we conclude that the complaint

contains sufficient factual allegations that could prohibit Defendants' reliance on the doctrine of qualified immunity, the Court can proceed no further.   However, Defendants are free to raise this issue in the context of a motion for summary judgment.").

To determine whether a government official enjoys qualified immunity, a court must decide "(1) whether the facts alleged or shown by the plaintiff make out a violation of a [statutory or] constitutional right;[1] and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation." *Maldonado* at 269.   The second prong has two related aspects, including the clarity of the law at the time of the alleged violation, and whether in the context of the specific facts of the case a reasonable defendant would have understood that his or her conduct violated the plaintiff's rights.   *Maldonado* at 269. Regarding the second prong then, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Maldonado* at 269.

---

[1] The plaintiff argues that qualified immunity cannot be granted on a statutory claim, but instead requires a constitutional right.  The Court does not agree. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established *statutory or constitutional* rights of which a reasonable person would have known.") (internal quotation marks omitted; emphasis added); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

This is a highly fact-intensive inquiry.  Indeed, the Supreme Court has cautioned that courts should not define "clearly established" law at a high level of generality. *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). *See also Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014) (defining clearly established law at a high level of generality "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.").  Additionally, "[a] determination of objective reasonableness 'will often require examination of the information possessed' by the defendant officials." *Kelley v. LaForce*, 288 F.3d 1, 7 (1st Cir. 2002).

The defendants argue that the rights Hodges and Whelan are alleged to have violated were not clearly established at the time of the defendants' actions and decisions.  The Court cannot agree.

Regarding Count One, courts in this district have recognized that the rights protected by the FMLA have been clearly established since at least 2007.  *See Mason v. Massachusetts Dept. of Environmental Protection*, 774 F. Supp. 2d 349, 373-74 (D. Mass. 2011) ("[T]he law was clear in general that it was a violation of the FMLA for the Individual Defendants to … interfere[] with Plaintiff's FMLA rights by failing to provide FMLA leave and not discharging their obligations to inquire; and (b) terminating Plaintiff in retaliation for his requesting FMLA leave.").  Applied here, it follows that it was sufficiently clear in 2016 that an

24

employer may not retaliate against an employee for exercising a protected FMLA such that "every reasonable official would have understood that what he is doing violates that right." *Stamps v. Town of Framingham*, 813 F.3d 27, 34 (1st Cir. 2016) quoting *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012).

Regarding Count Two, it has long been established that public employees have a property interest in their employment and are therefore entitled to process before termination. *Roth* at 576-77; see also *Gilbert v. Homar,* 520 U.S. 924, 928-29, (1997) ("public employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process."). The question, then, is whether in requiring the plaintiff to sign an LCA and stripping her of her right to process the defendants should have been aware that by doing so they were violating the plaintiff's constitutional rights.

A public employee's right to a hearing before being deprived of her job has long been clearly established. *See Ruiz-Casillas v. Camacho-Morales,* 415 F.3d 127, 134 (1st Cir. 2005) ("The Due Process Clause of the Fourteenth Amendment protects government employees who possess property interests in continued public employment.") citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985). At this stage of the proceedings the defendants' argument that this deprivation was valid because it

was in connection with an LCA is not germane because the complaint, which must be accepted as true, alleges that the LCA was not a legitimate action but merely part and parcel of the defendants' ruse to concoct disciplinary issues to force the plaintiff out of her job.  An employer in early 2016 would have known that concocting disciplinary issues in order to create a basis to impose an LCA on a protected employee as a way to strip her of her process rights would violate the employee's constitutional due process rights.  *See generally Garnier v. Rodruiguez*, 506 F.3d 22, 28 (1st Cir. 2007) (affirming denial of qualified immunity at motion to dismiss stage in case involving public employee allegedly terminated for his political affiliation without process because the complaint alleged sufficient facts "to show that a clearly established constitutional right had been violated, and that a reasonable official would have understood that the challenged conduct may have violated that right.").  Moreover, where the defendants' actions and knowledge are highly relevant to analyzing this claim, the Court simply does not have enough facts at this juncture to adequately assess the defendants' assertions.  *See Jordan v. Carter*, 428 F.3d 67, 75 (1st Cir. 2005) ("We … cannot eliminate the possibility that the facts once developed will show a violation of clearly established law.").

**The plaintiff has failed to state a claim for breach of contract.**

In order for a contract claim to survive a motion to dismiss, "[p]laintiffs … must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with "substantial certainty," the specific contractual promise the defendant failed to keep." *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007). The First Circuit has interpreted Rule 12(b)(6) to "require[] that plaintiffs allege a factual predicate concrete enough to warrant further proceedings." *Buck v. American Airlines, Inc.*, 476 F.3d 29, 38 (1st Cir. 2007) (upholding dismissal of contract claim that failed to allege sufficient facts) (internal quotations omitted). Indeed, the First Circuit has explained that in order to survive a motion to dismiss "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 66–67 (1st Cir. 2004). "In a contract action, this irreducible minimum requires the pleader to explain what obligations were imposed on each of the parties by the alleged contract." *Buck*, 476 F.3d at 38 (internal quotations omitted).

The complaint does not meet this standard with respect to Count Three. First, it fails to identify what "contract" is at issue. As the Court understands it, the plaintiff does not allege

27

the LCA to be the contract at issue.  At the hearing on the motion to dismiss, the plaintiff argued that, assuming the LCA was without force, the defendants breached a contract – presumably an implied one, when they forced the plaintiff to resign without providing her a hearing.  Without more, this claim is too vague and imprecise to provide meaningful guidance to the defendants.  The Court thus agrees that the breach of contract claim should be dismissed, but without prejudice, subject to the plaintiff's ability to amend to set out specific facts demonstrating she is entitled to relief.

## IV.  CONCLUSION

The defendants' Motion to Dismiss as to Counts One and Two is DENIED.  The Motion to Dismiss as to Count Three is GRANTED, without prejudice, with 14 days for leave to file an amended complaint alleging specific facts demonstrating an implied contract.[2]


/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  March 31, 2017

---

[2] The Court is aware that the plaintiff has filed a motion for leave to file a second amended complaint to add claims under the ADA and M.G.L. c. 151B. (Dkt. No. 32).  The leave to amend granted here is specific to the breach of contract claim found in the first amended complaint and has no bearing on the plaintiff's pending motion for leave to amend.